ONE WORLD ONE FAMILY NOW, a Hawaii non-profit corporation; James McDonough; Bhaktivedanta Mission, Ltd., a Hawaii non-profit corporation; Anton Voight, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF HONOLULU; Frank F. Fasi, individually and in his capacity as Mayor of the City and County of Honolulu; Michael Nakamura, Chief of Police; Donna Woo, individually and in her capacity as Special Deputy Attorney General of the State of Hawaii; and John Does 1–10, Defendants–Appellees.

ONE WORLD ONE FAMILY NOW; James McDonough, an individual; Bhaktivedanta Mission, Ltd., a Hawaii non-profit corporation; Anton Voight, Plaintiffs–Appellees,

v.

CITY AND COUNTY OF HONOLULU; Frank F. Fasi, individually and in his capacity as Mayor of the City and County of Honolulu; Michael Nakamura, Chief of Police, Defendants–Appellants.

Nos. 94–16373, 94–16511.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 1995.

Decided Feb. 13, 1996.

Keith M. Kiuchi, Kiuchi, Nakamoto & Ahu, Honolulu, Hawaii, for plaintiffs-appellants One World One Family Now and James McDonough.

Daniel R. Foley, Partington & Foley, Honolulu, Hawaii, for plaintiffs-appellants Bhaktivedanta Mission, Ltd. and Anton Voight.

Kathleen M. Sullivan, Stanford, California, Darolyn H. Lendio, Donna M. Woo, Hazel G. Beh, Honolulu, Hawaii, and Jon M. Van Dyke, Honolulu, Hawaii, for defendants-appellees.

Stephen V. Bomse, Terri A. Little, Heller, Ehrman, White & McAuliffe, San Francisco, California, and James A. Stubenberg, Fredrick W. Rohlfing III, Stubenberg & Durrett, Honolulu, Hawaii, for amici curiae DFS Group L.P. and Kinkai Properties Ltd. Partnership.

Before PREGERSON, KOZINSKI and HAWKINS, Circuit Judges.

KOZINSKI, Circuit Judge.

## OPINION

An ordinance prohibits the sale of merchandise on city streets. We must determine whether it may be constitutionally applied to bar non-profit organizations from selling message-bearing T-shirts.

### I

Plaintiffs One World One Family Now and Bhaktivedanta Mission are non-profit corporations operating in Hawaii. Both organizations sell T-shirts imprinted with various philosophical and inspirational messages, such as "Protect and Preserve the Truth, the Beauty & Harmony of our Native Cultures," Ex. 3, "TAKE IT EASY MEDITATE HANG LOOSE HAWAII," Ex. 4, and "WAIKIKI HAWAII HARINAM," Ex. 6.[1] Many of the T-shirts feature colorful depictions of Hawaii's scenic natural beauty, not unlike shirts sold in retail stores catering to tourists. Plaintiffs believe that selling T-shirts is a particularly effective way to communicate because those who buy and wear the T-shirts help spread the message.

Aiming for a wide audience, plaintiffs, along with a number of commercial T-shirt vendors, set up several display tables on the sidewalks of Kalakaua Avenue, one of the busiest commercial streets in Waikiki.[2] The City and County of Honolulu soon began to hear from visitors and local residents who complained that the T-shirt tables were an obstruction and an eyesore. Merchants with stores near the T-shirt tables also complained, citing a drop in their own sales of tourist-oriented merchandise, which they attributed to unfair competition from the sidewalk vendors.

The city notified the sidewalk vendors (including plaintiffs) that they were violating Honolulu, Haw., Rev.Ordinances § 29–6.2(b)(7), which bans the sale of all "goods, wares, merchandise, foodstuffs, refreshments or other kinds of property or services ... upon the public streets, alleys, sidewalks, malls, parks, beaches and other public places in Waikiki." After police threatened them with citations for failure to comply, plaintiffs sued for declaratory and injunctive relief under 42 U.S.C. § 1983, claiming that section 29–6.2 violated their First Amendment rights, and moved for a preliminary injunction.

The district court held an evidentiary hearing. Finding that the city was regulating the time, place and manner of speech pursuant to legitimate and significant interests, it refused to enjoin enforcement of the ordinance as to Kalakaua and Kuhio Avenues—the heart of Waikiki's commercial area and the focus of the city's evidence. The district court granted a preliminary injunction against enforcement of the ordinance in the rest of Waikiki, holding that the city hadn't shown a sufficient interest in keeping plaintiffs from selling there, or that doing so would leave adequate alternative means of communication. Both sides appeal.

### II

Because the focus of the litigation has been on Kalakaua and Kuhio Avenues, we deal first with the district court's decision not to enjoin enforcement of the ordinance there.

### A

Before we decide which standard to use in evaluating the ordinance, we dispose of a preliminary matter: the application here of our decision in *Gaudiya Vaishnava Soc'y v. City and County of San Francisco*, 952 F.2d 1059 (9th Cir.1990), *cert. denied*, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). Plaintiffs argue that, under *Gaudiya*, their selling is constitutionally protected expression. The city claims plaintiffs' activities aren't constitutionally protected at all.

---

1. "Harinam" apparently means "chant the name of god" in Sanskrit. Appellee's Br. at 5.

2. Waikiki is a relatively small, self-contained district within the city of Honolulu, comprising approximately 500 acres. Within it one can find, on any given day, the highest concentration of tourists in the city. It also has a large residential population.

In *Gaudiya*, we addressed two questions, one of first impression, the other not. The novel question was whether an ordinance prohibiting charitable organizations from selling message-bearing merchandise implicated the First Amendment. Rejecting San Francisco's contention that selling goods was unprotected conduct, we held that, when the sale of merchandise bearing political, religious, philosophical or ideological messages is "inextricably intertwined" with other forms of protected expression (like distributing literature and proselytizing), the First Amendment applies. *Id.* at 1064. The mundane question followed: Whether San Francisco's ordinance facially violated the First Amendment by giving the police chief unbridled discretion to grant or deny peddling permits for an activity protected by the First Amendment. Following a well-worn path, *see City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 756–57, 108 S.Ct. 2138, 2143–44, 100 L.Ed.2d 771 (1988) (collecting cases), we held the ordinance facially invalid. 952 F.2d at 1065–66.

 Plaintiffs' activities closely resemble those in *Gaudiya* and the First Amendment therefore protects them. But there ends the similarity. In *Gaudiya*, the ordinance granted the police chief unbridled discretion to grant peddling permits and the plaintiffs there brought a facial challenge to this discretion. By contrast, Honolulu's ordinance is a flat ban; there are some exceptions, but no discretion to be exercised. Accordingly, on appeal, plaintiffs challenge section 29–6.2 only as applied to their activities.[3]

### B

 Having determined that plaintiffs' T-shirt sales fall within the ambit of the First Amendment, we must decide whether Hono-

lulu's ordinance is valid as applied to them. We use the standard governing time, place and manner restrictions.[4] Such restrictions are valid if they (1) are content-neutral; (2) are narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels of communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989).

 **1.** A speech restriction is content-neutral if it is "justified without reference to the content of the regulated speech." *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753. The test is whether the government has adopted the restriction "because of disagreement with the message it conveys." *Id.*

 The district court found that the ordinance furthers three legitimate governmental interests: (1) "maintaining the aesthetic attractiveness of Waikiki," (2) "promoting public safety and the orderly movement of pedestrians," and (3) "protecting the local merchant economy." E.R. at 31. None of these interests concerns the content of speech, and there's no evidence that "the ordinance was designed to suppress certain ideas that the City finds distasteful or that it has been applied to [the plaintiffs] because of the views that they express." *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984). The ordinance imposes a flat ban, one that is applied without regard to content. Accordingly, it is content-neutral.[5]

---

**3.** Below, plaintiffs purported to bring a facial challenge, as well. We assume they don't appeal the district court's rejection of their facial challenge as they make no arguments to support such a challenge.

**4.** The city doesn't dispute that the sidewalks of Waikiki are a public forum, nor could it. *See, e.g., United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983).

**5.** Plaintiffs argue that the ordinance provides several exemptions that have the effect of discriminating on the basis of content. Its provisions do not apply to the "sale . . . of newspapers of general circulation and to duly authorized concessions in public places." Honolulu, Haw., Rev.Ordinances § 29–6.2(b). The provision also exempts buttons and souvenir items sold in conjunction with a parade. *Id.* § 29–6.2(c). Because these exemptions don't enable the city to

■ 2. Cities have a substantial interest in protecting the aesthetic appearance of their communities by "avoiding visual clutter." *Id.* at 806–07, 104 S.Ct. at 2129–30. As the district court found, Honolulu's interest in eliminating the visual blight caused by unsightly vendor stands easily qualifies under this standard. Likewise, cities have a substantial interest in assuring safe and convenient circulation on their streets. *See Cox v. Louisiana,* 379 U.S. 536, 554–55, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965). The district court found that Waikiki is the center of the state's tourism industry, receives as many as 60,000 visitors a day, and consequently has "a large concentration of vehicles and pedestrians which causes unique traffic problems." E.R. at 11. Judged in light of "the characteristic nature and function of the particular forum involved," *Heffron v. International Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 651, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981), the city's interest in maintaining the orderly movement of pedestrians on Waikiki's crowded sidewalks is also substantial. *See* Appendix.

■ Finally, Honolulu has demonstrated a substantial interest in protecting local merchants from unfair competition. *See Turner Broadcasting Sys., Inc. v. F.C.C.,* —— U.S. ——, ——–––––, 114 S.Ct. 2445, 2469–70, 129 L.Ed.2d 497 (1994). One legitimate preoccupation of local government is to attract and preserve business. Cities rely on a prosperous, stable merchant community for their tax base, as well as for the comfort and welfare of their citizens. Here, the district court found that "the tax-free and rent-free activities of the plaintiffs ... have had a significant affect [sic] on the economy of the abutting shop owners on Kalakaua and Kuhio Avenues whose taxes and rent contribute to the welfare and economy of this state." E.R. at 35. This kind of unfair competition threatens to erode tax revenues and undermine the strength of its commercial life.[6] As amici remind us, plaintiffs can offer "remarkably low prices" in part because they pay no rent and aren't subject to various municipal regulations. Given the district court's findings, we must take seriously the concern that "[n]o ordinary merchant, forced to pay rent in Waikiki and comply with other applicable laws, possibly could compete with those prices for any significant period of time." Br. Amici Curiae at 20.

Given the evidence before it and the deference due the city council's determinations of necessity, *see Turner Broadcasting,* —— U.S. at ——–––––, 114 S.Ct. at 2470–71 (plurality opinion),[7] the district court didn't err in concluding that the city had actual, significant interests. *See id.* at ——, 114 S.Ct. at 2470 (plurality opinion) (requiring finding that "recited harms are real, not merely conjectural" to establish significant government interest); *cf. id.* at ——–––––, 114 S.Ct. at 2472–73 (Blackmun, J., concurring). *Id.* at ——–––––, 114 S.Ct. at 2473–75 (Stevens, J., concurring).[8]

■ Honolulu's peddling ordinance is narrowly tailored to serve these interests because they "would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at

discriminate against ideas it disfavors, they don't render the ordinance content-based. *See Leathers v. Medlock,* 499 U.S. 439, 450, 111 S.Ct. 1438, 1445, 113 L.Ed.2d 494 (1991).

6. Plaintiffs contend that the city failed to offer any concrete evidence demonstrating that their T-shirt sales actually harmed local merchants. But "the validity of [a time, place or manner] regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." *Ward,* 491 U.S. at 801, 109 S.Ct. at 2759.

7. Although this portion of Justice Kennedy's opinion had only four votes, under *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990,

993, 51 L.Ed.2d 260 (1977), it's the holding of the case, since it was the "position taken by those members who concurred in the judgment[] on the narrowest grounds." *See Turner Broadcasting,* —— U.S. at ——–––––, 114 S.Ct. at 2473–75 (Stevens, J., concurring) (advocating greater deference).

8. The district court didn't clearly err in finding that the city showed insufficient evidence that sidewalk vending was actually "causing a proliferation of fraud and duress among tourists and residents." E.R. at 31. In any case, an ordinance that bans all sidewalk vending isn't narrowly tailored to eliminate fraud. *Cf. Martin v. City of Struthers,* 319 U.S. 141, 144–49, 63 S.Ct. 862, 863–66, 87 L.Ed. 1313 (1943) (ban on door-to-door handbilling not narrowly tailored to prevent crime and fraud).

799, 109 S.Ct. at 2758 (internal quotation marks omitted). Without the ordinance, sidewalk vendors (commercial and charitable alike) would be free to peddle their wares on Kalakaua and Kuhio Avenues, undermining the city's efforts to provide a pleasant strolling and shopping area. *See* Appendix. A proliferation of sidewalk vendors could also aggravate the congestion on already crowded sidewalks and siphon off sales from local merchants. Because the peddling ordinance addresses these problems "without ... significantly restricting a substantial quantity of speech that does not create the same evils," *Ward,* 491 U.S. at 799 n. 7, 109 S.Ct. at 2758 n. 7, section 29–6.2(b)(7) is narrowly tailored.[9]

Plaintiffs suggest less restrictive alternatives Honolulu could adopt to advance its interests, such as limiting the number of vendors, their hours of operation or the size and location of their stands. A reasonable time, place and manner regulation, however, need not be the "least restrictive or least intrusive" alternative. *Id.* at 798, 109 S.Ct. at 2757. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, ... the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800, 109 S.Ct. at 2758.

Honolulu's peddling ordinance isn't "substantially broader than necessary" to achieve its interests. The ordinance targets precisely the activity—sidewalk vending—causing the problems the city legitimately seeks to ameliorate, and it doesn't sweep in expressive activity that doesn't contribute to those problems. As in *Vincent,* the city "did no more than eliminate the exact source of the evil it sought to remedy." 466 U.S. at 808, 104 S.Ct. at 2130.

■ 3. Honolulu's peddling ordinance also leaves open ample alternative channels of communication. The ordinance forecloses one narrow form of expression—sidewalk sales of message-bearing merchandise—and leaves the plaintiffs free to disseminate and seek financial support for their views through "myriad and diverse" alternative channels, such as handing out literature, proselytizing or soliciting donations. *See ACORN v. City of Phoenix,* 798 F.2d 1260, 1271 (9th Cir. 1986) (ordinance prohibiting charitable solicitation from people in cars leaves open ample alternative channels of communication). In addition, plaintiffs' volunteers may hand out free T-shirts to passers-by, *see* note 9 *supra,* or mingle with Waikiki's tourist throngs wearing T-shirts (thereby acting as human billboards). Plaintiffs may also sell T-shirts through local retail outlets or by opening their own stores, so long as they comply with the regulations generally applicable to merchants.

Plaintiffs argue we must nevertheless invalidate the peddling ordinance because it prevents them from reaching their intended audience. They rely heavily on *Bay Area Peace Navy v. United States,* 914 F.2d 1224 (9th Cir.1990), where we invalidated the Coast Guard's 75–yard security zone around the Aquatic Park Pier during annual Fleet Week activities on San Francisco Bay. We noted that the security zone effectively prevented the plaintiff from reaching its intended audience (military officers, local government officials and other dignitaries) because its protest messages couldn't reach observers on the pier over 75 yards away. *Id.* at 1229–30. We emphasized that other channels of communication—passing out pamphlets or holding demonstrations on land—were "not viable alternatives because the invited visitors, who are the Peace Navy's intended audience, are not accessible from those positions." *Id.* at 1229 (internal quotation marks omitted).

*Bay Area Peace Navy* is inapposite. Nothing prevents plaintiffs here from reaching their intended audience—the tourists

---

9. The ordinance doesn't stop anyone from handing out T-shirts free of charge. This, plaintiffs argue, makes the ordinance invalid because handing out T-shirts causes the same harm to the city's interests as selling them. The city, however, was entitled to conclude that fewer sidewalk vendors would come to hand out merchandise for free. The ordinance is therefore a "valuable, but perhaps imperfect" means of addressing the targeted problem. *Clark,* 468 U.S. at 297, 104 S.Ct. at 3071; *cf. Vincent,* 466 U.S. at 811, 104 S.Ct. at 2132 ("Even if some visual blight remains, a partial, content-neutral ban may nevertheless enhance the City's appearance.").

congregating in Waikiki. As noted, they have a number of alternative means of disseminating their message, each of which allows them to communicate effectively with people on the sidewalks.

Finally, plaintiffs claim that the Supreme Court's recent decision in *City of Ladue v. Gilleo*, —— U.S. ——, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994), casts doubt on the validity of the ordinance. In *Ladue*, the Court struck down a broad ban on the display of signs on private residential property. The opinion rested heavily on the view that the city's ordinance closed off a "unique and important" mode of expression for which there is "no practical substitute." *Id.* at —— ——, 114 S.Ct. at 2045–46. The Court explained that "[d]isplaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means." *Id.* at ——, 114 S.Ct. at 2046.

■ Plaintiffs argue that selling message-bearing T-shirts is a unique mode of expression akin to displaying a sign in front of one's home. We are not persuaded. While *wearing* a message-bearing T-shirt might be a uniquely valuable mode of communication whose total ban could raise serious constitutional questions, *cf. Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), the same can't be said for *selling* such a T-shirt on the sidewalk. A message on one's person or home has a unique effect because it "provide[s] information about the identity of the 'speaker' [which is] an important component of many attempts to persuade." *Ladue*, —— U.S. at ——, 114 S.Ct. at 2046. While selling T-shirts is a unique form of expression in the sense that serving message-bearing raviolis or preaching on street corners in a Donald Duck voice would be unique, it does nothing to make the message uniquely significant or effective. Various other traditional means of dissemination would get across exactly the same idea. Thus, we do not believe the sale of message-bearing T-shirts is so "uniquely valuable or important [a] mode of communication" as to be without effective substitute. *Vincent*, 466 U.S. at 812, 104 S.Ct. at 2132.

## III

■ Although the district court refused to enjoin enforcement of the ordinance on Kalakaua and Kuhio Avenues, it granted a preliminary injunction for the rest of Waikiki, finding that the city had proved its interest only as to these two streets. E.R. at 31–35. Neither party asked for this Solomonic solution and, on appeal, both correctly argue that the district court erred in differentiating between Waikiki's main and side streets. Cities need not prove up their interests on a block-by-block basis, particularly where the interests asserted are as basic and traditional as Honolulu's. *See, e.g., Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981). The evidence before the district court focused on Kalakaua Avenue because that's where most of the sidewalk vendors were operating. *See* Deposition of James McDonough at 37–38; Deposition of Anton Voight at 61–62. There was ample evidence, though, that the city's interests in open and attractive sidewalks and fair competition extended throughout Waikiki. *See, e.g.,* E.R. at 11–12 (district court's findings indicating Waikiki's history of special treatment in city ordinances); Defendant's Ex. 8 at 43–55 (1992 Waikiki Master Plan indicating plans to improve and beautify streets throughout Waikiki); R.T. at 168–69 (testimony that landowners wouldn't make crucial concessions to allow further implementation of Master Plan if widened and beautified sidewalks would be inhabited by sidewalk vendors). Indeed, these types of interests can be presumed to operate throughout a city, absent a strong showing to the contrary.

The district court also found that a ban throughout Waikiki didn't leave ample alternative channels for plaintiffs to communicate their messages. Citing *Clark* and *Gaudiya*, it reasoned that a "total ban on selling expressive T-shirts in a heavily trafficked section of town" was impermissible. E.R. at 32–33. Neither we nor the Supreme Court have said any such thing. Rather, we have held broad and narrow bans in even the most desirable locations to the same standard. The broader the ban, of course, the more

difficult it is to prove that the remaining means of communication are adequate. Difficult, however, doesn't mean impossible. As discussed above, this ordinance meets the test.

Accordingly, plaintiffs showed no likelihood of success on the merits and the district court erred in granting their motion for a preliminary injunction, even in part. *See Senate of California v. Mosbacher,* 968 F.2d 974, 977–78 (9th Cir.1992).

\* \* \*

Honolulu's peddling ordinance is content-neutral, narrowly tailored to serve substantial interests throughout Waikiki, and leaves ample alternative channels of communication. We therefore **AFFIRM** the partial denial of plaintiff's motion for a preliminary injunction on its enforcement on Kalakaua and Kuhio Avenues and **VACATE** the preliminary injunction on its enforcement in other areas of Waikiki.

**AFFIRMED IN PART; REVERSED IN PART.**

## APPENDIX

PREGERSON, Circuit Judge, dissenting: Because I believe the First Amendment protects the right to speak freely in a public

forum, I dissent. Two aspects of the majority opinion are troublesome. First, the majority opinion diminishes the free speech right at stake here by narrowing the scope of our decision in *Gaudiya Vaishnava Society v. City of San Francisco*, 952 F.2d 1059 (9th Cir.1990), *cert. denied*, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). Second, the majority's time, place, and manner analysis rubber-stamps Honolulu's ordinance restricting speech even though (a) the ordinance is not narrowly tailored to achieve Honolulu's civic goals, and (b) no equally effective alternative forum for the restricted speech exists. I address each concern in turn.

I

The majority recognizes that the plaintiffs' T-shirt sales fall within the protective ambit of the First Amendment. Nevertheless, the majority's analysis gives short shrift to our important discussion in *Gaudiya* concerning the substance of the right to speak in a public forum, which includes the right to sell message-bearing T-shirts.

In *Gaudiya*, we held that merchandise with messages affixed to the product, "when sold in conjunction with other activities in order to disseminate [an] organizations' message . . . is fully protected speech." 952 F.2d at 1064–65. There, various nonprofit organizations challenged a San Francisco ordinance that prohibited selling, without a permit, T-shirts and other message-bearing merchandise at Fisherman's Wharf and Union Square. *Id.* at 1060–61. The messages conveyed—verbally or symbolically—the nonprofits' philosophies. *Id.* at 1060. The sale of message-bearing merchandise at high foot-traffic locations helped the nonprofits solicit donations, distribute literature, and educate the public about their causes. *Id.*

As in *Gaudiya*, the T-shirts at issue here bear messages that convey the religious and political philosophies of the plaintiff organizations. Some of the T-shirts read: "Meditate," "Clean and Safe Oceans for All," and

"Protect and Preserve the Truth, the Beauty & Harmony of our Native Cultures." Just because the messages are printed along with pictures of flowers or fish does not diminish the religious or political quality of the speech. The messages on the merchandise in *Gaudiya* were also intermingled with aesthetic design, but we nevertheless found that the sale of the merchandise was "inextricably intertwined" with fully protected speech. *Gaudiya*, 952 F.2d at 1064 n. 5.

Also, as was true of the San Francisco nonprofits, the plaintiffs here distribute information about their philosophies in conjunction with selling message-bearing T-shirts. The ultimate purpose of these T-shirt transactions is the dissemination of passionately-held viewpoints. The people manning the T-shirt stands discuss their religious beliefs and philosophies with anyone who stops by.[1]

Contrary to the majority's view, *Gaudiya* controls the disposition of the case at hand. It is true that *Gaudiya* struck down San Francisco's permit requirement because of its lack of "rules that give guidance to the chief of police." *Gaudiya*, 952 F.2d at 1065. But we didn't strike down the permit requirement merely because it was police-administered. We were concerned with San Francisco's unbridled restriction of free speech in the absence of a rational set of operating procedures; and, we looked to whether the city had given its chief of police guiding rules for restricting speech. *Id.* at 1065–66.

Applying *Gaudiya* to this case is not difficult. Under *Gaudiya*, Honolulu could have easily avoided running afoul of the First Amendment by instituting guiding rules under which nonprofits could sell their message-bearing T-shirts. But Honolulu imposed a blanket ban on such sales. This ban amounts to an unlimited governmental restriction of speech in a public forum—in substance, the same kind of governmental action condemned in *Gaudiya*. As in *Gaudiya*, there is no need here for Honolulu's unbridled ban on First Amendment activities. *See*

---

1. The plainclothes officer who investigated the T-shirt stands testified that he had a "good" conversation with an "active" member of the Bhaktivedanta Mission, who shared his religious beliefs with the officer and read aloud parts of a handout on these beliefs. The officer also testified that three organizations, including One World One Family Now, distributed literature to him.

*Gaudiya,* 952 F.2d at 1065. Yet the majority minimizes any substantive similarity between Honolulu's blanket ban and San Francisco's unchecked permit scheme.

The majority opinion does not explain adequately its departure from *Gaudiya.* On the one hand, the majority acknowledges that plaintiff organizations have a "fully protected" speech right. But on the other hand, the majority fails to recognize Honolulu's duty to respect and preserve that right for it to be effective. In so doing, the majority's position only gives lip service not only to *Gaudiya,* but also to the Supreme Court's strong admonitions that message-bearing merchandise, when sold in conjunction with other First Amendment activities, is *fully protected* speech. *See Heffron v. International Soc'y for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). *See also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 385, 93 S.Ct. 2553, 2558, 37 L.Ed.2d 669 (1973) (stating that newspaper's profit motive should not be the basis for regulation of First Amendment rights); *Village of Schaumburg v. Citizens for a Better Env't,* 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980) (holding that charitable appeals for funds in conjunction with other First Amendment activities are protected).

Underlying the majority opinion may be the notion that the nonprofits are using the First Amendment to protect a niche in the Waikiki T-shirt market. If this is so, then the matter should be remanded for further findings of fact. Without a more complete record, an unsupported suspicion that the T-shirt stands are a sham should not be the basis for circumventing the First Amendment.

## II

The majority opinion's time, place, and manner discussion is thin. The majority summarily concludes that Honolulu's ordinance is content-neutral, is narrowly tailored to serve a significant governmental interest, and leaves ample alternative channels of communication. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). The last two conclusions are questionable.

### A

To satisfy the narrowly tailored requirement, a regulation need not be the "least restrictive" means of serving the relevant government interest, but "if there are numerous and obvious less-burdensome alternatives to the restriction on ... speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 413 n. 13, 113 S.Ct. 1505, 1510 n. 13, 123 L.Ed.2d 99 (1993). Indeed, as we concluded in *Project 80's, Inc. v. City of Pocatello,* 942 F.2d 635, 638 (9th Cir.1991), "restrictions which disregard far less restrictive and more precise means are not narrowly tailored."

Honolulu claims that it enacted the peddling ordinance to maintain the aesthetic attractiveness of Waikiki, promote public safety and orderly movement of pedestrians, protect the local merchant economy, and prevent the nonprofit vendors from pressuring or defrauding potential buyers. These are laudable civic goals. But obvious, less restrictive means for achieving these same aims are readily available, and the majority simply chooses to ignore them.

To control congestion and visual blight, Honolulu can easily prohibit the nonprofits from setting up their stands in the most congested areas, such as areas near street intersections. Honolulu can also limit the size or number of stands that nonprofits may operate on each block, or restrict sales during certain times of the day, such as during the morning and afternoon rush hours. To protect the local merchant economy, Honolulu can require the nonprofits to display prominent signs on each stand, which is what some nonprofits already do.[2] Signs would clearly identify each organization as a nonprofit. This would make it obvious to tourists and other passersby that they are not dealing with the traditional souvenir shop.

---

2. For example, One World One Family Now's T-shirt stands display a sign that reads "One World Family."

Finally, to prevent fraud and duress, Honolulu can employ traditional legal methods, such as prosecuting those who actually commit such crimes. *See Martin v. Struthers*, 319 U.S. 141, 148, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943) (invalidating ordinance which prohibited the distribution of handbills to residences because city can punish those who harass or defraud occupants); *cf. Schneider v. State*, 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939) (invalidating ordinance which prohibited passing out leaflets on city streets because obvious alternative methods such as punishing those who litter would effectively solve the littering problem).

In sum, a cursory glance at the available options reveals numerous less-restrictive alternatives to an outright ban on the sale of message-bearing T-shirts by nonprofits on Waikiki. Because Honolulu disregards obvious, far less restrictive, and more precise methods of achieving the same ends, Honolulu's ordinance is not narrowly tailored. *See Discovery Network*, 507 U.S. at 417 n. 13, 113 S.Ct. at 1510 n. 13; *Project 80's*, 942 F.2d at 638.

### B

The majority also claims that plaintiff organizations remain free to spread their message through other media or in other places. Yet such alternative modes of communication may nevertheless be constitutionally inadequate if the speaker's "ability to communicate effectively is threatened." *Bay Area Peace Navy*, 914 F.2d at 1229 (citations omitted). The Supreme Court has given us guidance on this point in *City of Ladue v. Gilleo*, — U.S. —, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

In *Ladue*, private property owners challenged an ordinance that prohibited display of any signs on their property other than "For Sale" or "For Rent." The Court struck down the ordinance because the City of Ladue foreclosed a "unique" and "important" medium of expression—the display of a sign on one's property to express a point of view. *Id.* at —, 114 S.Ct. at 2045. The Court rejected the city's argument that the regulation left open ample alternative channels of communication because it found that hand-held signs and other media were not an adequate substitute for posted signs:

> Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute.

*Id.* at —, 114 S.Ct. at 2046.

Similarly, the T-shirt sales in this case constitute an effective and inexpensive medium of expression. When combined with oral proselytizing and literature distribution, selling message-bearing T-shirts is a particularly effective form of charitable solicitation. Indeed, a listener is more likely to expend funds to support a particular cause if he receives, in return, a T-shirt that communicates a message to him and that allows him to express *his* support for the cause by wearing it.

For the plaintiff organizations, Waikiki is a location uniquely suited to their mission. Waikiki is the social and economic center of not just the City of Honolulu, but also of the State of Hawaii. The nonprofits offered evidence that they selected Waikiki to sell their T-shirts because the area would allow them to share their philosophies with a large number of people who visit Hawaii from all over the world. Depriving plaintiffs of access to Waikiki separates them from a large and diverse audience.

The majority assumes the existence of other forums for plaintiffs' First Amendment activities. But we have held that an alternative is not adequate if the speaker is not permitted to reach the "intended audience." *Bay Area Peace Navy*, 914 F.2d at 1229. In *Bay Area Peace Navy*, we invalidated a Coast Guard regulation that prohibited protesters from demonstrating within a 75–yard radius of the pier during the annual "Fleet Week" celebration. We found that the 75–yard zone completely insulated the audience from the anti-war and anti-militarization views of the demonstrators. 914 F.2d at 1230. *See also Ladue*, — U.S. at —, 114 S.Ct. at 2046 (alternatives to posting signs on residential property such as posting signs on commercial property are inadequate because residents may wish to reach neighbors); *Students Against Apartheid Coalition v. O'Neil*,

660 F.Supp. 333, 339–40 (W.D.Va.1987) (university regulation prohibiting shanties on lawn of building where Board of Visitors meets, impermissibly insulates the Board, the intended audience, from the protest), *aff'd*, 838 F.2d 735 (4th Cir.1988).

Here, the majority allows the City of Honolulu to exile plaintiff organizations from Waikiki. In so doing, it allows their removal from Waikiki's large and diverse audience and prevents them from spreading their message in an efficient and effective manner. Under *Bay Area Peace Navy*, Honolulu must afford plaintiffs an opportunity to reach their intended audience. This is especially true when, as discussed above in part A, there are reasonable alternative means to achieve legitimate government interests.

Accordingly, I dissent.