965 A.2d 190 (2009)
405 N.J. Super. 446
STATE of New Jersey, Plaintiff-Respondent,
v.
Sergei CHEPILKO, Defendant-Appellant.
DOCKET NOS. A-5473-06T4, A-0084-07T4.
Superior Court of New Jersey, Appellate Division.
Submitted November 18, 2008.
Decided March 4, 2009.
*192 Hill Wallack, attorneys for appellant (Mario C. Formica, on the brief).
Howard E. Freed, Atlantic City Municipal Prosecutor, attorney for respondent (Samuel D. Lashman, Assistant Municipal Prosecutor, on the brief).
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
Defendant was found guilty on two occasions of violating municipal ordinances that prohibit the sale of merchandise on the Atlantic City boardwalk by attempting to take photographs of persons walking on the boardwalk and then selling them to the subjects. On appeal, defendant argues that this business activity is expressive conduct protected by the First Amendment and consequently the Atlantic City ordinances could not be constitutionally applied to prohibit it. He also argues that one of those ordinances is unconstitutionally vague and violates due process by conferring unbridled discretion upon the mayor to decide whether to issue a special events permit.
We conclude that defendant's business activity does not serve predominantly expressive purposes and therefore is not entitled to protection under the First Amendment. We also conclude that, as applied to defendant, the municipal ordinances under which he was prosecuted are not unconstitutionally vague and do not confer unbridled discretion upon the mayor. Therefore, defendant does not have standing to challenge the constitutionality of those ordinances. Accordingly, we reject defendant's constitutional arguments and affirm his convictions.

I.
Around 2 a.m. on October 22, 2006, two police officers on patrol observed defendant *193 on the boardwalk in front of the Wild Wild West Casino in Atlantic City taking pictures of persons walking on the boardwalk. Defendant not only had a camera but also a printer and a display board with photographs and prices of particular size photographs attached to it. Defendant also had a suitcase to carry this paraphernalia. One officer told defendant he could not solicit persons to take their photographs without a permit. Defendant responded that the officer was "violating his civil rights."
The officers charged defendant with violating Atlantic City's municipal ordinance 145-1, which provides:
No person shall hawk, peddle or vend any ice cream, food, beverages, confections, goods, wares, merchandise or commodities of any nature or description on the public Boardwalk in the City of Atlantic City or upon any of the approaches thereto except as permitted by a special events permit issued by the Mayor.
Defendant did not take the stand in his trial in municipal court. Consequently, the charging officers' description of the business operation defendant conducted on the boardwalk was unrebutted. However, defendant, who appeared pro se, argued in summation that, under an order entered by a federal district court in the Bery case, the selling of photographs in public places such as streets and boardwalks is protected by the First Amendment.[1] Based on this precedent, defendant argued that ordinance 145-1 could not be constitutionally applied to his business activity on the boardwalk.
The municipal court judge concluded that defendant had engaged in the "hawking" of photographs on the boardwalk, in violation of ordinance 145-1. The judge declined to consider defendant's constitutional argument on the ground that such a claim should be considered only in the Superior Court. The judge imposed a $206 fine for defendant's violation of the ordinance.
Defendant appealed his conviction to the Law Division, where he was represented by counsel. Defense counsel expanded upon defendant's argument presented in municipal court that the application of ordinance 145-1 to his business activity violated the First Amendment. In addition, defense counsel argued for the first time that ordinance 145-1 is "unconstitutionally vague."
The Law Division judge found, based on the evidence presented in municipal court, that "defendant was going about carrying out some kind of photographic business on the board-walk, trying to take pictures of people and printing them out and selling them for a fee," which constituted a violation of ordinance 145-1. The judge also rejected defendant's constitutional arguments.
*194 Defendant's second violation of a municipal ordinance for attempting to take and sell photographs of persons walking on the boardwalk occurred at approximately 10:20 p.m. on November 11, 2006. A police officer on patrol observed defendant approaching persons on the boardwalk with a placard containing eight photographs, one of which was of defendant. It appeared to the officer that defendant was attempting to sell the photographs, and defendant confirmed in a conversation with the officer that he was selling the photographs for from $2 to $5. The officer also observed a small camera in defendant's top pocket. The officer asked defendant to produce a mercantile license to engage in this commercial activity, but he did not have one. Defendant claimed in response to the officer's questions that he did not need a license to sell photographs.
The officer charged defendant with violating Atlantic City municipal ordinance 170-2, which provides in pertinent part:
No person shall engage in or carry on any business in the City of Atlantic City, nor aid or assist as employee, clerk or otherwise in carrying on such business,... nor sell or offer for sale any goods or thing for which a license is required by the terms of this article unless a license as herein provided for shall have been first obtained therefor.
Defendant admitted at his trial in municipal court, in which he appeared pro se, that he displayed the placard with the attached photographs to persons on the boardwalk. However, he claimed that his purpose was not to sell the photographs but rather to advertise his skill as a photographer so that persons who saw the photographs would hire him as a photographer for weddings or parties. Defendant also argued, as in his other trial in municipal court, that he had a right under the First Amendment to sell photographs on the boardwalk without obtaining a license.
The municipal court judge found, based on the charging officer's testimony and the placard that defendant displayed to persons on the boardwalk, that defendant had been engaged in offering to take photographs of persons walking on the boardwalk for sale. In making this finding, the judge stated that "looking at [the placard] it's very clear that there's different people in pictures here, ... and it has $10 here on the back, ... there's an inference that can be drawn that [he was] offering to take pictures of people on the Boardwalk." The judge therefore concluded that defendant had violated ordinance 170-2 by engaging in the business of selling photographs without a license. As in the other case, the municipal court judge declined to consider defendant's constitutional argument. The court imposed a $106 fine for the violation of ordinance 170-2.
Defendant appealed his conviction to the Law Division, where he was represented by counsel. Defense counsel expanded upon defendant's argument presented in municipal court that the application of ordinance 170-2 to his business of offering photographs for sale on the boardwalk violated the First Amendment.
The Law Division judge affirmed the municipal court's determination that defendant's sale of photographs on the boardwalk without a mercantile license violated ordinance 170-2. The judge also rejected defendant's argument that the application of this ordinance to his form of business activity violates the First Amendment. The judge imposed the same fine imposed by the municipal court.
Defendant filed separate appeals from his convictions for the violations of ordinances 145-1 and 170-2. We now consolidate the appeals.
*195 In his appeal from his conviction for violating ordinance 145-1, defendant argues that the part of this ordinance and other municipal ordinances that authorize the mayor to issue a "special events permit," under which a permittee may engage in commercial activity that otherwise would be prohibited by ordinance 145-1, is unconstitutionally vague and violates due process by conferring unfettered discretion upon the mayor to decide whether to issue such a permit. In the appeal from his conviction under ordinance 170-2, defendant argues that his photography business constitutes the expression of commercial visual art, which is protected by the First Amendment, and that ordinance 170-2 and other municipal ordinances infringe upon his First Amendment rights by imposing a de facto prohibition against the exhibition of such art on the Atlantic City boardwalk.
We conclude that defendant lacks standing to challenge the validity of the municipal ordinances governing the issuance of "special events" permits because defendant did not apply for such a permit and, in any event, his photography business clearly would not qualify for a special events permit. We also conclude that the street photography business defendant was conducting on the Atlantic City boardwalk did not constitute expressive conduct. Therefore, Atlantic City's prohibition against this activity did not violate defendant's First Amendment rights. Accordingly, we affirm both of defendant's convictions.

II.
Ordinance 145-1 imposes a clear and easily understood prohibition against "hawk[ing], peddl[ing] or vend[ing] any... goods, wares, merchandise or commodities of any nature or description on the public Boardwalk in the City of Atlantic City." Defendant does not contend that there is anything vague about this prohibition or that this part of the ordinance confers any discretion upon the mayor. Defendant also does not dispute the trial court's finding that he violated this prohibition by attempting to take photographs of persons walking on the boardwalk and then selling the photographs to the subjects. Defendant's appeal from his conviction under ordinance 145-1 is based solely on the final clause of this ordinance, which creates an exception from the absolute prohibition against selling merchandise on the boardwalk for any party who has obtained a "special events permit issued by the Mayor." However, defendant did not apply for a special events permit, and it is clear that the commercial activity for which he was found guilty of violating ordinance 145-1 would not qualify for issuance of such a permit. Therefore, defendant may not challenge his conviction under ordinance 145-1 on the ground that the ordinances governing special events permits are unconstitutionally vague as applied to other persons or violate due process by conferring unbridled discretion upon the mayor.
Generally, "a litigant only has standing to vindicate his own constitutional rights." City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772, 781 (1984). The Supreme Court has recognized exceptions to this general rule for challenges to "laws that are written so broadly that they may inhibit the constitutionally protected speech of third parties," id. at 798, 104 S.Ct. at 2125, 80 L.Ed.2d at 782, or confer unbridled discretion upon a government official whether to issue a license for an activity that affects free speech, City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755-59, 108 S.Ct. 2138, 2142-45, 100 L.Ed.2d 771, 781-84 (1988). However, these exceptions are *196 limited to circumstances where a law affecting free expression is invalid in most, if not all, of its applications. See United States v. Williams, ___ U.S. ___, 128 S.Ct. 1830, 1838, 170 L.Ed.2d 650, 662 (2008); Virginia v. Hicks, 539 U.S. 113, 119-20, 123 S.Ct. 2191, 2196-97, 156 L.Ed.2d 148, 157-58 (2003); Taxpayers for Vincent, supra, 466 U.S. at 799-801, 104 S.Ct. at 2126, 80 L.Ed.2d at 783-84. Consequently, "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or conduct necessarily associated with speech." Hicks, supra, 539 U.S. at 124, 123 S.Ct. at 2199, 156 L.Ed.2d at 160. Our courts apply these same principles in determining the standing of a party to challenge the constitutionality of a statutory enactment affecting free speech rights. See, e.g., Twp. of Pennsauken v. Schad, 160 N.J. 156, 179-81, 733 A.2d 1159 (1999); State v. Cameron, 100 N.J. 586, 593-94, 597 n. 2, 498 A.2d 1217 (1985).
Under these principles, defendant lacks standing to challenge the constitutionality of the ordinances governing the issuance of special events permits. It is clear defendant could not obtain such a permit for his business of photographing persons on the boardwalk. As the name "special events" permit implies, such permits may be issued only under special circumstances, generally for a very limited period of time, and subject to strict limitations. One subsection of the ordinance authorizes the issuance of such a permit for "art exhibitions," but if the exhibition includes "sale of art works" on the boardwalk, the term of the permit may not exceed two days. Another subsection authorizes issuance of such a permit for "commercial activities or events" but limits the term to seven days and restricts such activities or events to the "Kennedy Plaza." Defendant has not asserted that he could conduct his business operation under the strict limitations of these ordinances. Therefore, even if these ordinances posed an issue of unconstitutional overbreadth or delegation of unbridled discretion to the mayor as applied to other parties, defendant is not subject to those provisions and therefore lacks standing under the general rule governing standing to challenge the constitutionality of statutory enactments.
Moreover, the limited exceptions to the standing rule do not apply to this case. Neither the general prohibition imposed by ordinance 145-1 against hawking, peddling and vending on the boardwalk nor the limited exception from this prohibition provided for parties who qualify for the issuance of a special events permit are directed at First Amendment activity. Furthermore, it seems unlikely that many parties who are subject to the prohibition or may apply for a special events permit would be involved in speech or expressive conduct entitled to First Amendment protection. Consequently, even if the prohibition or the special events permit exception had the potential to inhibit the exercise of First Amendment rights in some circumstances, there still would be no basis for concluding that ordinance 145-1 "prohibits a `substantial' amount of protected speech in relation to its many legitimate applications." Hicks, supra, 539 U.S. at 124, 123 S.Ct. at 2199, 156 L.Ed.2d at 160. Therefore, any constitutional infirmity in the provisions governing the issuance of special events permits would not provide a defense to defendant's prosecution for a violation of the general prohibition against hawking, peddling and vending on the boardwalk and defendant thus lacks standing to challenge the constitutionality of the ordinances governing issuance of special events permits.

III.
Before addressing defendant's argument that his boardwalk photography business *197 constitutes expressive conduct protected by the First Amendment, we make several preliminary observations.
First, we note that, even where there is no basis for a First Amendment challenge, ordinances prohibiting or regulating the sale of merchandise on a municipality's streets or, in this case, its boardwalk, may be subject to challenge under the due process and equal protection guarantees of the federal and state constitutions. See Fanelli v. City of Trenton, 135 N.J. 582, 592-94, 641 A.2d 541 (1994); Brown v. City of Newark, 113 N.J. 565, 571-72, 552 A.2d 125 (1989). However, apart from the constitutional arguments already addressed in section I of this opinion, defendant's challenge to the Atlantic City ordinances under which he was prosecuted is limited to the First Amendment.[2]
Second, although one of defendant's convictions was for a violation of ordinance 170-2, which requires a mercantile license to sell any goods or service in Atlantic City, it is clear defendant could not have obtained a mercantile license to engage in his photography business on the Atlantic City boardwalk. Ordinance 170-9 specifically states that a mercantile license "shall not permit ... peddling or vending ... upon ... the Boardwalk," and ordinance 145-1, upon which defendant's other prosecution was based, contains a flat prohibition against the selling of any goods "of any nature or description on the public Boardwalk." The only exception to this blanket prohibition is the authorization provided by a "special event permit" discussed in section I of this opinion. However, as previously discussed, it is clear such a permit could not be obtained for the kind of business activity in which defendant engages. Therefore, the Atlantic City ordinances do not simply require a permit or license for defendant's business activity but instead impose an absolute prohibition against a person selling merchandise such as defendant's photographs of persons walking on the boardwalk.
Third, even though defendant has presented First Amendment arguments solely in his brief in support of the appeal from his conviction under ordinance 170-2, those arguments would appear equally applicable to his conviction under ordinance 145-1.
The free speech guarantee of the First Amendment applies not only to the written or spoken word but also to expressive conduct. See Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 65-66, 126 S.Ct. 1297, 1310-11, 164 L.Ed.2d 156, 175-76 (2006); Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 568-70, 115 S.Ct. 2338, 2344-45, 132 L.Ed.2d 487, 500-01 (1995); State v. Vawter, 136 N.J. 56, 63-64, 642 A.2d 349 (1994). The expressive conduct protected by the First Amendment is not limited to conduct that communicates a political, social, philosophical or religious message; First Amendment protection also extends to artistic expression such as painting, music, poetry and literature. Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 602-03, 118 S.Ct. 2168, 2186, 141 L.Ed.2d 500, 525-26 (1998); Hurley, supra, 515 U.S. at 569, 115 S.Ct. at 2345, 132 L.Ed.2d at 501; Ward v. Rock Against Racism, 491 U.S. 781, 790, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661, 674 (1989). Moreover, First Amendment protection *198 is not lost simply because compensation is paid for artistic expression. See Riley v. Nat'l Fed'n of Blind of N.C., Inc., 487 U.S. 781, 801, 108 S.Ct. 2667, 2680, 101 L.Ed.2d 669, 692 (1988).
If a party seeks to shield conduct from governmental regulation on the basis of this First Amendment protection, the threshold question is whether the conduct was in fact expressive. See Rumsfeld, supra, 547 U.S. at 64-65, 126 S.Ct. at 1310, 164 L.Ed.2d at 175; Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 158 (3d Cir.2002), cert. denied, 539 U.S. 942, 123 S.Ct. 2609, 156 L.Ed.2d 628 (2003). Most human conduct, particularly in the commercial sphere, is not expressive. Thus, the sale of merchandise such as jewelry, clothing or incense is not ordinarily expressive and therefore is not entitled to First Amendment protection. See Bery, supra, 97 F.3d at 696; Al-Amin v. City of New York, 979 F.Supp. 168, 173 (E.D.N.Y.1997). Even conduct that is ordinarily expressive may not be intended to express any message in some circumstances and therefore would not be entitled to First Amendment protection. For example, the Court held in Hurley that a "parade" is entitled to First Amendment protection because it consists of "marchers who are making some sort of collective point, not just to each other but to bystanders along the way." 515 U.S. at 568, 115 S.Ct. at 2344-45, 132 L.Ed.2d at 500. However, the Court also recognized that "[i]f there were no reason for a group of people to march from here to there except to reach a destination, they could make the trip without expressing any message beyond the fact of the march itself," and in that instance the conduct would not be entitled to First Amendment protection. Ibid.; see also Dallas v. Stanglin, 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18, 25-26 (1989) (noting that "[i]t is possible to find some kernel of expression in almost every activity a person undertakesfor example, walking down the street ...but such a kernel is not sufficient to bring the activity within the protection of the First Amendment").
The line-drawing process required to distinguish between expressive conduct protected by the First Amendment and other human conduct that does not merit this protection is illustrated by One World One Family Now v. City & County of Honolulu, 76 F.3d 1009 (9th Cir.), cert. denied, 519 U.S. 1009, 117 S.Ct. 554, 136 L.Ed.2d 403 (1996), which involved a challenge to a municipal ordinance that prohibited the sale of merchandise on the streets, sidewalks and other public places in the Waikiki Beach area of Honolulu, as applied to the sale by non-profit organizations of message-bearing t-shirts. The court stated that "when the sale of merchandise bearing political, religious, philosophical or ideological messages is `inextricably intertwined' with other forms of protected expression (like distributing literature and proselytizing), the First Amendment applies." Id. at 1012 (quoting Gaudiya Vaishnava Soc'y v. City & County of San Francisco, 952 F.2d 1059, 1064 (9th Cir. 1990), cert. denied, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992)). Therefore, the court concluded that the sale of message-bearing t-shirts was expressive conduct entitled to First Amendment protection.[3]
Another illustration of the line-drawing process involved in distinguishing between expressive conduct that is protected by the First Amendment and other human conduct *199 is provided by Mastrovincenzo, supra, 435 F.3d 78. The question presented by that appeal was whether two freelance artists who engaged in the business of selling articles of clothing decorated with texts and images in what they described as a "graffiti style" were required to comply with a municipal ordinance that required all street vendors to be licensed. See id. at 86-87. The threshold issue was whether those artists' business activity was "predominantly expressive" and therefore entitled to First Amendment protection. Id. at 91. The court held that to resolve this issue, it must consider both the "objective features of the merchandise itself" and the artists' "stated motivation for producing and selling" the merchandise:
[T]o resolve whether the First Amendment protects the sale of graffiti clothing, we must ultimately determine whether the disseminators of that clothing are genuinely and primarily engaged in artistic self-expression or whether the sale of such goods is instead a chiefly commercial exercise. Because the most reliable means of resolving this difficult question is to examine objective features of the merchandise itself, however, we begin by analyzing whether plaintiffs' items, on their face, appear to serve predominantly expressive purposes. After evaluating the nature of plaintiffs' merchandise, we also take into account other factors such as plaintiffs' stated motivation for producing and selling their graffiti clothing.
[Ibid.]
The court indicated that this determination requires a "case-by-case evaluation" of the expressiveness of merchandise for which a party asserts a First Amendment protected right to sell:
[I]n the nature of things, some ... items ultimately may be characterized as "expressive" while others may be deemed "mere commercial goods"that is, goods whose characteristics suggest that their vendors are not engaged in protected speech.
[Id. at 93.]
Judged by these criteria, the court held that plaintiff-artists' "graffiti goods serve a predominantly expressive purpose, and their sale is consequently protected under the First Amendment." Id. at 97.[4]
We have no doubt that the production and sale of photography may constitute expressive conduct protected by the First Amendment under the principles discussed in One World One Family Now and Mastrovincenzo. Indeed, art schools instruct students about modern photographic techniques and art museums often contain substantial collections of photographs by recognized masters of this art. See Gilles v. Davis, 427 F.3d 197, 212 n. 14 (3d Cir. 2005) (observing that "photography ... that has a communicative or expressive purpose enjoys some First Amendment protection"); ETW Corp. v. Jireh Publ'g, Inc., 332 F.3d 915, 924 (6th Cir.2003) (holding that "[t]he protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression [such as] ... photographs").
However, the fact that some photography qualifies as expressive conduct entitled to First Amendment protection does not mean that any commercial activity that involves photography falls under the umbrella of the First Amendment. Rather, to claim First Amendment protection from government regulation, a vendor of photography, like a vendor of other *200 merchandise, such as the t-shirts involved in One World One Family Now or the clothing apparel involved in Mastrovincenzo, must demonstrate that the production and sale of those photographs constitutes expressive conduct. See Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 294 n. 5, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221, 227 (1984) (holding that "[a]lthough it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies"); see also Tenafly Eruv Ass'n, supra, 309 F.3d at 161. This demonstration involves primarily an examination of the "objective features of the merchandise itself," that is, whether "[defendant's] items, on their face, appear to serve predominantly expressive purposes," and also may take into account "[defendant's] stated motivation for producing and selling [his merchandise]." Mastrovincenzo, supra, 435 F.3d at 91.
The record in this case indicates that defendant used a pocket camera to take snapshots of persons walking on the boardwalk and then attempted to sell the photographs to the subjects. Although the record before us does not contain examples of these photographs, there is no basis for concluding that defendant's simple snapshots of persons he approached on the boardwalk "serve[d] predominantly expressive purposes." Ibid. Indeed, those snapshots were apparently similar to the snapshots taken in photography booths sometimes located on the boardwalk and other places of public amusement. Moreover, defendant did not claim that his motivation in taking and attempting to sell the snapshots was artistic expression. Rather, it appears evident defendant's essential purpose in engaging in this commercial activity was to make money. Therefore, we conclude that in taking and attempting to sell snapshots of persons walking on the Atlantic City boardwalk, defendant was not "genuinely and primarily engaged in artistic self-expression" but "instead a chiefly commercial exercise" that is not entitled to First Amendment protection. Ibid.
Defendant argues, relying upon the Second Circuit's opinion in Bery, that regardless of whether the photographs he took of persons walking on the boardwalk serve predominantly expressive purposes or his motivation in taking and selling those photographs, any commercial photographic activity is protected by the First Amendment. Bery was an action brought in federal district court by individual artists engaged in painting, photography and sculpture and an arts advocacy organization, which challenged a municipal ordinance that barred visual artists from exhibiting or selling their artistic works in New York City without first obtaining a general vendors' license. 97 F.3d at 691. The case was brought before the Second Circuit Court of Appeals by an appeal from the denial of a motion for a preliminary injunction. Ibid. In reversing this denial, the court focused on the issue of whether art constitutes expressive conduct entitled to protection under the First Amendment. See id. at 694-96. The court concluded that art is different from other merchandise that vendors sell on city streets and that its display and sale is entitled to First Amendment protection:
The district court seems to have equated the visual expression involved in these cases with the crafts of the jeweler, the potter and the silversmith who seek to sell their work. While these objects may at times have expressive content, paintings, photographs, prints and sculptures, such as those appellants *201 seek to display and sell in public areas of the City, always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection.
[Id. at 696.]
However, because of the abstract form in which the issue of whether art constitutes expressive conduct protected by the First Amendment was presented, the court did not have occasion to consider whether all commercial activity involving photography automatically constitutes such expressive conduct.
In Mastrovincenzo, the court expressed skepticism about the soundness of "Bery's analytic framework." 435 F.3d at 93. However, because any panel of the Second Circuit is "bound by a prior panel's holding unless it has been called into question by an intervening Supreme Court decision or by one of [the Second Circuit] sitting in banc," ibid. (internal quotation omitted), the panel was constrained to accept the Bery panel's holding that certain categories of merchandise, including photography, "`always communicate[] some idea or concept' to viewers,'" ibid., and therefore are entitled to First Amendment protection.
Courts outside of the Second Circuit that are not bound by Bery have been critical of its conclusion that the sale of certain categories of merchandise is automatically entitled to First Amendment protection without regard to whether a specific item of merchandise is sufficiently expressive to merit First Amendment protection. In White v. City of Sparks, 341 F.Supp.2d 1129, 1138-39 (D.Nev.2004), aff'd, 500 F.3d 953 (9th Cir.2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2062, 170 L.Ed.2d 795 (2008), the court stated:
While plaintiff would have this court adopt the Bery holding and find that all paintings, photographs, prints and sculptures are inherently expressive, thereby eliminating the need for any individualized inquiry into the expressiveness of a particular piece of art or a particular type of artwork, the court declines this invitation. Applying such a blanket presumption of protected status ... would... be out of step with Ninth Circuit precedent and the First Amendment's fundamental purposeto protect expression.... [T]he difficulty with Bery is that it is
arguably at once too broad and too narrow in [its] scope of protection. Conceivably, not every item of painting, photograph, print or sculpture that may be offered for sale on City sidewalks by any vendor is necessarily so expressive as to categorically merit First Amendment protection, but at the same time some objects outside those four categories may also be sufficiently expressive.
[quoting Mastrovincenzo v. City of New York, 313 F.Supp.2d 280, 294 n. 11 (S.D.N.Y.2004).]
There has been similar scholarly criticism of Bery:
[T]he [Bery ] injunction is used to protect any vendor selling mass-produced pictures of celebrities or photographs of landmarks, as well as "any sidewalk calligrapher or Chinese-character painter." Bery effectively removed expressivity from the analysis of paintings, photographs, prints, and sculpture, even as it vaunted the expressive potential of those media. Centuries of aesthetic scholarship and discourse are flattened to a legal presumption.
[Genevieve Blake, Comment, Expressive Merchandise and the First Amendment in Public Fora, 34 Fordham Urb. L.J. 1049, 1070-71 (2007).]
*202 We agree with this criticism of Bery's holding that any business activity that involves the taking and sale of photographs automatically qualifies for First Amendment protection. We conclude, contrary to Bery and consistent with One World One Family Now, Mastrovincenzo and White, that such business activity is entitled to First Amendment protection only if it serves predominantly expressive purposes. See also Rumsfeld, supra, 547 U.S. at 66, 126 S.Ct. at 1310, 164 L.Ed.2d at 175 (holding that First Amendment protection extends "only to conduct that is inherently expressive"). Defendant failed to make this showing with respect to his business activity of taking and selling snapshots of persons walking on the Atlantic City boardwalk. Therefore, the Law Division correctly rejected his First Amendment defense to Atlantic City's prosecutions for this activity.

IV.
Moreover, even if defendant's business of taking snapshots of persons walking on the boardwalk could be found to constitute expressive conduct, we would conclude that Atlantic City's prohibition against this activity does not violate the First Amendment. "Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." Clark, supra, 468 U.S. at 293, 104 S.Ct. at 3069, 82 L.Ed.2d at 227. "[R]estrictions of this kind are valid provided they are justified without reference to the content of the regulated speech, ... are narrowly tailored to serve a significant governmental interest, and... leave open ample alternative channels for communication of the information." Ibid.
In One World One Family Now, the court held that the application of municipal ordinances prohibiting the sale of merchandise in the Waikiki Beach area of Honolulu to the selling of message bearing t-shirts by non-profit organizations satisfied these tests. 76 F.3d at 1016. In reaching this conclusion, the court stated:
Cities have a substantial interest in protecting the aesthetic appearance of their communities by "avoiding visual clutter." ... Honolulu's interest in eliminating the visual blight caused by unsightly vendor stands easily qualifies under this standard. Likewise, cities have a substantial interest in assuring safe and convenient circulation on their streets.
....
Honolulu's peddling ordinance is narrowly tailored to serve these interests because they "would be achieved less effectively absent the regulation." Without the ordinance, sidewalk vendors (commercial and charitable alike) would be free to peddle their wares on Kalakaua and Kuhio Avenues, undermining the city's efforts to provide a pleasant strolling and shopping area.
....
Honolulu's peddling ordinance isn't "substantially broader than necessary" to achieve its interests. The ordinance targets precisely the activitysidewalk vendingcausing the problems the city legitimately seeks to ameliorate, and it doesn't sweep in expressive activity that doesn't contribute to those problems.
....
The district court ... found that a ban throughout Waikiki didn't leave ample alternative channels for plaintiffs to communicate their messages.... [I]t reasoned that a "total ban on selling expressive T-shirts in a heavily trafficked section of town" was impermissible. Neither we nor the Supreme Court have said any such thing. Rather, we have held broad and narrow bans in *203 even the most desirable locations to the same standard. The broader the ban, of course, the more difficult it is to prove that the remaining means of communication are adequate. Difficult, however, doesn't mean impossible.
[Id. at 1013-16 (internal citations omitted).]
See also United States v. Kokinda, 497 U.S. 720, 733-35, 110 S.Ct. 3115, 3123-24, 111 L.Ed.2d 571, 586 (1990); Mastrovincenzo, supra, 435 F.3d at 97-102; Friends of the Vietnam Veterans Mem'l v. Kennedy, 116 F.3d 495, 496-98 (D.C.Cir.1997).
If plaintiff's business activity were considered to be expressive conduct, we would sustain the applicability of the Atlantic City ordinances prohibiting the sale of merchandise on the boardwalk to defendant's business for substantially the same reasons as are set forth in One World One Family Now. Atlantic City has a substantial interest in eliminating the "visual blight" caused by persons hawking goods and services on the boardwalk. Atlantic City also has a substantial interest in assuring safe and convenient circulation of pedestrians on its often crowded boardwalk. Moreover, defendant has not made a showing that he is unable to engage in his photography business at other locations in Atlantic City. Therefore, even if we viewed that business as expressive conduct entitled to First Amendment protection, we would conclude that Atlantic City's prohibition was valid.
Accordingly, defendant's convictions for violations of ordinances 145-1 and 170-2 are affirmed.
NOTES
[1] The decision of the Second Circuit Court of Appeals in Bery v. City of New York, 97 F.3d 689, 696 (2d Cir.1996), cert. denied, 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997), which reversed the denial of a motion for a preliminary injunction, is discussed in section III of this opinion. After the Second Circuit remanded the case to the district court, New York City entered into a consent final injunction, which provided in pertinent part that in light of the Second Circuit's holding that "paintings, photographs, prints and sculptures... always communicate some idea or concept to those who view it [sic], and as such are entitled to full First Amendment protection," 97 F.3d at 696, the City would stop enforcing its vendor licensing requirements against all vendors of these forms of art. See Mastrovincenzo v. City of New York, 435 F.3d 78, 81-82 (2d Cir.2006). Defendant was apparently referring to this consent judgment in his argument before the municipal court.
[2] The free speech clause of the New Jersey Constitution, N.J. Const. art. I, para. 6, is generally interpreted to be co-extensive with the First Amendment. See Schad, supra, 160 N.J. at 176, 733 A.2d 1159. Defendant does not argue that the New Jersey Constitution should be interpreted to provide broader protection for his commercial activity than the First Amendment.
[3] Nevertheless, the court upheld the validity of the ordinance prohibiting the sale of such merchandise in the Waikiki Beach area for the reasons discussed in section IV of this opinion.
[4] Nevertheless, the court concluded that the municipal ordinance requiring licensing of street vendors could be validly applied to those plaintiffs. Id. at 97-102, 733 A.2d 1159.