# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 10, 2010

No. 08-50960

Charles R. Fulbruge III
Clerk

MICHAEL KLEINMAN; SCOTT WADE; JOHN FURLY TRAVIS,

Plaintiffs-Appellants

v.

CITY OF SAN MARCOS

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and PRADO and HAYNES, Circuit Judges.

EDITH H. JONES, Chief Judge:

This appeal concerns whether a junked-vehicle ordinance designed to eliminate eyesores and promote public order, SAN MARCOS, TEX., CODE OF ORDINANCES § 34.196(a), can be applied to a wrecked Oldsmobile 88 that has been put to use as a cactus planter, colorfully painted, and adorned with the words "make love not war." Appellants contend that the car is an expressive artwork and that interference with this display violates their rights under the First Amendment and the Visual Artists Right Act (VARA). 17 U.S.C. § 166A(a)(3). The district court rejected both claims, then went further and ordered the owner to comply with a removal order of the San Marcos municipal

No. 08-50960

court. We also reject Appellants' constitutional and statutory claims but vacate the district court's attempt to enforce the municipal court order.[*]

## I. BACKGROUND

Appellant Michael Kleinman operates Planet K stores throughout the San Antonio and Austin areas. Planet K stores are funky establishments that sell novelty items and gifts. Kleinman has a tradition of celebrating new store openings with a "car bash," a charity event at which the public pays for the privilege of sledgehammering a car to "a smashed wreck." The wrecks are then filled with dirt, planted with vegetation, and painted. Placed outside each store, the "planters" serve as unique advertising devices.

An Oldsmobile 88 car-planter was created upon the opening of a new Planet K store in San Marcos, Texas. Kleinman arranged to have the smashed car planted with a variety of native cacti and painted with scenes of life in San Marcos. Positioned in front of the store, the distinctive planter is visible to motorists traveling north on Interstate 35. Kleinman did not dictate the content of the illustrations, but he requested that the phrase "make love not war" be incorporated into the design. Two local artists, Scott Wade and John Furly Travis, were commissioned to paint the wreck. At trial, Travis testified that he had no particular message in mind when he painted the car, "just happiness." He intended his images to convey the idea that "you could take a junked vehicle, junk canvas, and create something beautiful out of it." Wade sought to transform "a large gas-guzzling vehicle" into "something that's more respectful of the planet and something that nurtures life as opposed to destroys it." Wade explained that his intent was to describe American car culture and the link between gasoline and the war in Iraq.

---

[*] Judge Haynes concurs in the judgment only.

No. 08-50960

On several occasions during and after the conversion of the smashed wreck into a car-planter, the City of San Marcos ticketed Planet K and various Planet K employees under an ordinance banning junked vehicles. The ordinance declares junked vehicles to be a public nuisance and prohibits citizens from placing or keeping junked vehicles on their property. SAN MARCOS, TEX., CODE OF ORDINANCES §§ 34.194, 34.196(a). The ordinance defines a "junked vehicle" as follows:

> *Junked vehicle* means a vehicle that is self propelled, inoperable, and:
> (1) Does not have lawfully affixed to it both an unexpired license plate and a valid motor vehicle safety inspection certificate;
> (2) Is wrecked, dismantled, partially dismantled, or discarded; or
> (3) Has remained inoperable for more than 45 consecutive days.

*Id.* § 34.191.

Kleinman contested the tickets and requested a hearing to determine whether the car-planter falls within that definition. The San Marcos municipal court found that it did and ordered the car-planter removed or brought into compliance by concealment behind a fence or in an enclosure.[1] Kleinman then brought suit for injunctive relief in state court. The City removed the case to federal district court. Wade and Travis joined the suit to assert their claims under VARA.

Following a bench trial, the district court determined that the application of the junked-car ordinance to the car-planter would not violate the First Amendment and that Wade and Travis failed to state a statutory claim for relief. The district court also ordered all three plaintiffs *sua sponte* to comply with the

---

[1] A junked vehicle can be brought into compliance if the "vehicle or vehicle part is completely enclosed within a building and is not visible from the street or other private or public property" or if the "vehicle is completely covered by a heavy duty, contour-fitting cover so that no part of the vehicle except the tires is exposed to public view and it is the only one on the property," SAN MARCOS, TEX., CODE OF ORDINANCES § 34.197(a)(1), (a)(4).

3

No.  08-50960

municipal court order and bring the car-planter into compliance with the City Code within thirty days.  This appeal ensued.

## II.  STANDARD OF REVIEW

This court reviews a district court's factual findings after a bench trial for clear error and its legal conclusions *de novo.  Water Craft Mgmt. LLC v. Mercury Marine,* 457 F.3d 484, 488 (5th Cir. 2006).  Clear error exists:

> if (1) the findings are without substantial evidence to support them, (2) the court misapprehended the effect of the evidence, and (3) although there is evidence, which if credible would be substantial, the force and effect of the testimony, considered as a whole, convinces the court that the findings are so against the preponderance of credible testimony that they do not reflect or represent the truth and right of the case.

*Id*.  Reversal for clear error is warranted only if the court has a definite and firm conviction that a mistake has been committed.  *Id*.

## III.  DISCUSSION

### A.  First Amendment

Appellants' principal contention is simple:  "visual art" is fully protected by the First Amendment.  Consequently, neither the city ordinance nor the state statute standing behind the ordinance[2] may impose a "content-based regulation" prohibiting the car-planter's public display.  In the alternative, Appellants, while acknowledging that the car-planter is a "junked vehicle," assert that the ordinance fails to satisfy intermediate scrutiny as applied to their creation.

---

[2] Texas Transportation Code declares a junked vehicle visible from a public place to be a public nuisance and its maintenance to be a misdemeanor punishable by a fine not to exceed $200.  TEX. TRANSP. CODE § 683.071, 072-073 (2007).  In addition, municipalities may adopt procedures to remove junked vehicles.  *Id*. § 683.074.  Any municipal procedures cannot apply to a junked vehicle (1) that is completely enclosed in a building in a lawful manner and is not visible from the street or other public or private property; or (2) that is lawfully stored in connection with the business of a vehicle dealer or junkyard, or is an antique or special interest vehicle, provided that the vehicle is orderly maintained, not a health hazard, and screened from the public view.  *Id*. § 683.077.

4

No. 08-50960

That this cactus planter, a three-dimensional advertisement for a novelty shop, could be considered a constitutionally-protected expression speaks more to the law's vagueness than to the capability or intention of the artists. In fact, the City stipulated that "the vehicle/planter is an object which contains and projects some level of artistic expression after it was painted by Plaintiffs Wade and Travis and altered to allow it to grow plant-life."[3] But this category is not so unbounded. The Supreme Court, in the course of applying the First Amendment to an expressive act (a Saint Patrick's Day parade), stated unanimously:

> As some of these examples [of non-speech protected expression] show, a narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a "particularized message," would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schönberg, or Jabberwocky verse of Lewis Carroll.

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569, 115 S. Ct. 2338, 2345 (1995) (citation omitted). *Hurley* refers solely to great works of art. Neither in *Hurley* nor in any later case has the Court elaborated on the extent of First Amendment protection for visual non-speech objects or artworks.

Seizing on *Hurley*'s statement, the Second Circuit declared, in a case concerning New York City's street vendor regulations, that artworks including paintings, photographs, prints, and sculptures are "always" communicative and therefore entitled to "full First Amendment protection." *Bery v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996). Despite this broad language, the *Bery* court held only that the ordinance's application to vendors of those works did not stand up to intermediate scrutiny. *Id.* Further, the court reasoned that, because

---

[3] The City, of course, rejects a characterization of the planter as protected by the First Amendment.

No. 08-50960

the crafts of the jeweler, the potter, and the silversmith are only sometimes "expressive," the constitutional protection afforded those categories of works must be determined on a case-by-case basis. *Id.*

Subsequently, the Second Circuit grappled with *Bery*'s implication when vendors of T-shirts and ballcaps decorated with "graffiti art" sought an exemption from the same New York City ordinance. *Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006). The court narrowed *Bery*'s broad dictum: "To say that the First Amendment protects the sale or dissemination of all objects ranging from 'totem poles' to television sets does not take us far in trying to articulate or understand a jurisprudence of ordered liberty; indeed, it would entirely drain the First Amendment of meaning."[4] *Id.* at 92 (citation omitted). The court recast *Bery*'s distinction between fine art and decorative arts in terms that enforcement officers and vendors in the "real world" can understand and apply "without recourse to principles of aesthetics." *Id.* at 95. *Mastrovincenzo* ultimately decided that the "expressive" elements of the clothing merited some First Amendment protection, but that the city ordinance was narrowly tailored

---

[4] *Bery* has been criticized or limited by other lower court opinions as well. *See*, *e.g. White v. City of Sparks*, 341 F. Supp. 2d 1129, 1139 (D. Nev. 2004)(declining to follow the *Bery* holding because it would be out of step with

> the First Amendment's fundamental purpose — to protect *expression.*"); *Mastrovincenzo v. City of New York*, 313 F. Supp. 2d 280, 294 n.11 (noting that the difficulty with *Bery* is that it is "at once too broad and too narrow in their scope of protection. Conceivably, not every item of painting, photograph, print or sculpture that may be offered for sale on City sidewalks by any vendor is necessarily so expressive as to categorically merit First Amendment protection, but at the same time some objects outside those four categories may also be sufficiently expressive.

*State v. Chepilko*, 965 A.2d 190, 202 (N.J. Super. Ct. App. Div. 2009)(agreeing with criticism of *Bery*'s holding that any business activity that involves the taking and sale of photographs automatically qualifies for First Amendment protection and concluding that such business activity is entitled to First Amendment protection only if it serves predominantly expressive purposes).

6

No. 08-50960

and left ample alternative avenues of communication, thereby satisfying intermediate scrutiny.

We share the *Mastrovincenzo* court's skepticism that the heavy machinery of the First Amendment is to be deployed in every case involving visual non-speech expression. Protected expression takes many forms, but *Hurley*'s reference to works of fine art did not sweep so broadly as to require a judicially crafted hierarchy of artistic expression. By analyzing the artist-vendors' rights under intermediate scrutiny, the *Bery* court effectively conceded as much.

Fortunately, we need go no further than that in the instant case. Irrespective of the intentions of its creators or Planet K's owner, the car-planter is a utilitarian device, an advertisement, and ultimately a "junked vehicle." These qualities objectively dominate any expressive component of its exterior painting.[5] Appellants concede that the car falls within the definition of the San Marcos ordinance. Moreover, the Eighth Circuit, confronted before *Hurley* with a wrecked auto that was displayed streetside to remind the public how the owner's son had been killed, had no difficulty finding that the auto's removal under a junked-vehicle ordinance survived intermediate scrutiny. *Davis v. Norman*, 555 F.2d 189 (8th Cir. 1977). When the "expressive" component of an object, considered objectively in light of its function and utility, is at best secondary, the public display of the object is conduct subject to reasonable state regulation. We therefore pretermit "recourse to principles of aesthetics."

In an abundance of caution, however, because the City concedes that the car-planter has some protected expressive content, we apply the intermediate scrutiny test articulated by the Supreme Court in *United States v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673 (1973), which balances the individual's right to

---

[5] We need not reach the City's contention that, if viewed as some form of protected speech, the car-planter represents commercial speech entitled to a lesser level of constitutional protection.

speak with the government's power to regulate. *O'Brien* rests on the principle that when "speech" and "non-speech" elements are united in a course of conduct, a valid governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. *Id*. at 376, 88 S. Ct. at 1678-79. Under *O'Brien*, a regulation is constitutional if it is within the constitutional power of the government; it furthers an important or substantial governmental interest; the government interest is unrelated to the suppression of free expression; and the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Id*. at 376, 88 S. Ct. at 1679. The junked-vehicle ordinance passes muster under the *O'Brien* test.

First, regulation of junked vehicles is within the City's traditional municipal police powers. Second, important governmental interests justify the ordinance, the purpose of which is to protect the community's health and safety from the problems created by abandoned vehicles left in public view. A junked vehicle is a public nuisance:

> A junked vehicle that is located in a place where it is visible from a public place or public right-of-way is detrimental to the safety and welfare of the general public, tends to reduce the value of private property, invites vandalism, creates fire hazards and constitutes an attractive nuisance creating a hazard to the health and safety of minors and is detrimental to the economic welfare of the city by producing urban blight adverse to the maintenance and continuing development of the City and is a public nuisance.

SAN MARCOS, TEX., CODE OF ORDINANCES § 34.196(a). Junked vehicles are an attractive nuisance to children. Rodents, pests, and weeds thrive in and around them. Testimony showed that the City pursued more than 1,300 junked vehicle cases in the two years prior to trial. These facts, found by the district court, fully support the City's interests in regulating junked vehicles. The ordinance also tends to reduce urban blight, vandalism, and the depressing effect of junked

8

vehicles on property values. Appellants' insistence that the car-planter has been rendered safe is immaterial to the constitutionality of the ordinance. The City's right to regulate junked vehicles, not the individual status of each vehicle, is the concern of First Amendment inquiry. *See FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 430, 110 S. Ct. 768, 779 (1990).

Third, the junked-vehicle ordinance is not intended to regulate "speech" at all but is a content-neutral health and safety ordinance. Appellants argue that the City's enforcement of the ordinance is motivated by disagreement with the content of the car-planter's "message" and thus should be subject to the strict scrutiny reserved for content-based speech regulations. The district court made no finding of an impermissible motivation, nor is such a finding compelled by the record.

Fourth, the ordinance is reasonably tailored to achieve the City's legitimate interests with only incidental restriction on protected expression. The ordinance authorizes junked vehicles to remain on private property if enclosed from public view. SAN MARCOS, TEX., CODE OF ORDINANCES § 34.197(a)(1). Appellants contend that the ordinance is not narrowly tailored because it permits an exception for dealerships and junkyards. The underlying state statute, however, prohibits the City from adopting any procedures as to vehicles "stored or parked in a lawful manner on private property in connection with the business of a licensed vehicle dealer or junkyard." TEX. TRANSP. CODE § 683.077. Thus, the City has an overarching legal basis for exempting dealerships and junkyards from its junked vehicle statute. Indeed, the exemption for businesses that deal with junked vehicles reinforces rather than discredits the content-neutrality of the junked vehicle ordinance. Both the City and the State sensibly distinguish individual conduct from commercial conduct, which creates different hazards and requires different regulations. In addition, the ordinance is  limited to

regulating the medium and location of the car-planter, and in so doing it reduces the blight and attractive nuisance problems caused by vehicular wrecks.

Appellants also argue that the enclosure requirement leaves them without any adequate alternative means of expression. *See Ward v. Rock Against Racism*, 491 U.S. 781, 798-99, 109 S. Ct. 2746, 2753 (1989). But as the district court noted, enclosing the car-planter does not cut off public access because it leaves Planet K free to display the car-planter behind a fence, indoors, or in a garage enclosure. Kleinman could still advertise and invite the public to view the car-planter. He could, pursuant to local law, erect a sign or display a poster of the car-planter visible to the public. Because the ordinance affords ample alternative means for Appellants to express their messages, this court will not second-guess the scope of the ordinance nor impose Appellants' preferred display mode on the City. *Id.* at 800, 109 S. Ct. at 2758.

## B. VARA

Appellants Travis and Wade also raise claims under the VARA. The VARA provides the author of a work of visual art with the right:

> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

> (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

17 U.S.C. § 106A(a)(3). The district court denied relief under VARA, finding that the junked-vehicle ordinance does not require the destruction of a junked vehicle, merely its screening from general public view.

The preliminary statutory issue, however, is whether the car-planter qualifies as a "work of visual art" under the VARA. The statute excludes "any merchandising item or advertising, promotional, descriptive, covering, packaging

material or container" from protection. 17 U.S.C. § 101. The district court found that the car-planters are closely associated with Planet K, are part of the store's corporate image and culture, and are a distinctive symbol of the Planet K business. These findings, which are not clearly erroneous, indicate that the car-planters are "promotional" material and thus outside of the VARA's protection. See *Pollara v. Seymour*, 344 F.3d 265, 270 (2d Cir. 2003). For this reason as well as that of the district court, we affirm the conclusion that Appellants Travis and Wade failed to state a claim for relief under VARA.

## C. Order for Compliance

The district court ordered that "Plaintiffs shall comply with the Order of the San Marcos Municipal Court" and "bring the car planter into compliance with City Code." Appellants assert this order was in error since the City never requested any affirmative relief. Further, Wade and Travis were not parties to the municipal court's order and cannot be ordered to "comply." We agree. Although the City contends that the order is actually in Kleinman's favor—by giving him thirty days to comply before any City enforcement action—the district court lacked jurisdiction to grant this relief. This portion of the district court's order must be vacated.

## III. CONCLUSION

For the reasons articulated above, we affirm the judgment on the merits but vacate the portion of the district court's judgment that orders Appellants to comply with the municipal court order.

**AFFIRMED IN PART AND VACATED IN PART.**